**GEORGE D HARTER BANK v SCHREMBS et (2 cases)**

Ohio Appeals, 8th Dist, Cuyahoga Co

Nos 15535 & 15536. Decided Oct 26, 1936

Rodgers & Wendling, Canton, Black, Mc-Cuskey, Ruff & Sowers, Canton, Leuck, Wenrick & Helm, Cleveland, for plaintiff appellant.

Mooney, Hahn, Loeser, Keough & Fulton, Cleveland, for defendant appellees.

ROSS, J, (1st Dist), MONTGOMERY and SHERICK, JJ, (5th Dist) sitting by designation.

## OPINION

By SHERICK, J.

These causes are appealed by the appellant Bank to this court upon questions of law. For the purpose of presentation in this tribunal the matters are consolidated. The actions are grounded upon two certain promissory notes. The petitions are in the short form approved by the code. The prayers are for personal judgment against all defendants. The notes sued upon are renewals of prior like obligations issued before the late financial unpleasantness and are in the following tenor:

"Canton, Stark County, Ohio, April 1, 1934

Ninety days after date, for value received for The Calvary Cemetery, Canton, Stark County, Ohio, we promise to pay to the order of The Geo. D. Harter Bank, Fifty-one Thousand Two Hundred and seventy three and 42/100 Dollars with interest at six percent.

Joseph Schrembs
Bishop of Cleveland
Calvary Cemetery Association
By: J. T. Bickart, Treas."

"Harrisburg, Stark Co., Ohio, July 9, 1931.

Six months after date, for value received for Sacred Heart of Mary Church, Harrisburg, Stark County, Ohio, we promise to pay, to the order of Geo. D. Harter Bank, Louisville, Ohio, Eleven Thousand Two Hundred and no/100 Dollars with interest at six percent.

Joseph Schrembs
Bishop of Cleveland
F. T. Kasinski, Pastor

Councilmen:
Austin Samblanet
Leroy Frank
Victor J. Haidet
H. S. Zwick."

These notes bear an endorsement on the back thereof. They differ only in to whose account they were placed. A copy of the church note endorsement is as follows:

"Recorded

In "record of notes, etc." Vol. 3. Account Sacred Heart of Mary, Harrisburg
    J. A. McFadden
    Chancellor, Diocese of Cleveland."

In the Cemetery case the Bishop answers admitting the plaintiff's capacity and that he is the Bishop of the Roman Catholic Diocese of Cleveland and denies that he is indebted on the instrument sued upon. He further avers that the notes' full consideration was received by the Cemetery Association; that as such Bishop, he holds, upon a naked trust, the legal title to the Association's lands which is an unincorporated association not for profit; that he signed the note in his capacity of Bishop, solely as such trustee and duly authorized agent of the association, whose name as the obligor of said note is set forth on the face thereof; that the note is the obligation of the association, and that all of the related facts were known to the plaintiff at the execution of the note. The reply filed traverses this new matter.

A jury having been waived the cause was submitted to the court. Prior to trial, the plaintiff dismissed his action, without prejudice, as against all other defendants save Bishop Schrembs. At trial the cause was concluded in the Bishop's favor.

The defendants in the Church case jointly answer. They make the same admissions and deny any individual indebtedness. They aver that they received no portion of the notes' consideration and that such was received by the Church in its entirety. The averments of the answer in the Cemetery case are repeated. It is averred further that Kasinski is the church's pastor and the agent of its congregation, that the four remaining defendants are its councilmen duly elected by its congregation as their agents to manage its temporal affairs, and that as pastor and councilmen they signed the note as its duly authorized agents. The reply thereto is a like denial.

This cause was likewise submitted to the court and resulted in a finding in favor of all defendants.

The plaintiff to maintain its causes introduced the notes in evidence and rested. The defendants thereupon proceeded to make proof of the matters set forth in defense and also placed in evidence the church statutes pertaining to the acquisition and holding of real property by the Bishop in trust, and the church rules for the manner of issuance and execution of notes by the agents of a parish congregation and cemetery association through the Bishop, pastor, treasurer and councilmen. These church laws were in force and followed for about forty years. It was developed that the notes sued upon represent perhaps the fifteenth to the twentieth renewal of these obligations.

The objections taken to the court's action upon the various motions and the entrance of judgments adverse to the appellant may all be embraced, for the purpose of this review, in one question, which is: Are the judgments contrary to the law applicable to the case?

The entire theory upon which appellant claims a right to personal judgment as against all subscribing defendants lays in the fact that the church society and cemetery association are unincorporated bodies, that they can not be sued as such because they possess no legal entity or existence, that when one signs as agent he must be able to bind his principal, and having no capable principal he binds himself. In other words that a solution of the question of personal liability is to be found by an application of the general rule of agency as it applies to contracts. It is our notion that this theory is not tenable.

In 1902 the legislature of this state adopted a uniform negotiable instruments code. It was and is intended as a complete exposition of law to govern the issuance and liability of those entering into contracts, such as bills and notes, which are negotiable by endorsement and delivery. The obligations sued upon, being of that character, solution of the presented query should and is to be found among those statutes of which §8125 GC is a part. It prescribes:

"When the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized. But the mere addition of words describing him as an agent or as filling a representative capacity, without disclosing his principal, does not exempt him from personal liability."

Embodied within these notes is found the phrase which clearly indicates that these sums are borrowed "for" the Cemetery As-

sociation and the Church Society respectively. The signature to the signers of these notes all indicate on their face that they are not signing it as individuals but in some representative capacity. The Bank was advised that it was borrowed for these departments of the Roman Catholic Diocese of Cleveland. It knew that it was dealing with an association and religious congregation of some character, incorporated or unincorporated. It knew that these organizations should sign the note in some fashion. Perhaps it did or did not make an attempt to learn if these borrowers were unincorporated. If it did not, it should not now be heard to complain of its present difficulty in making collection any more so than had it loaned its funds to a minor through the medium of a duly authorized agent who had disclosed his principal. It chose to loan its funds to and for the benefit of unincorporated societies. It might have been advised upon inquiry of how it was to sign the obligation or the extent of the authorization of those who would sign for it.

The question now before us is not one of collectibility but of individual liability. It should also be noted in passing that these are actions between the original parties to the notes, hence questions that might follow in case of negotiation are not before us.

The evidence offered on behalf of the defendants was not tendered for the purpose of varying or altering the terms of these negotiable contracts but for the sole purpose of establishing the relationship and authority of the individuals to so act for their disclosed principal. The evidence conclusively established, as it is in no way contradicted, that these organizations, and similar institutions, through their membership in the association and congregation, have for a period of forty years been governed by the canons of the Roman Catholic Church in this Diocese which prescribe through whom they shall act and by whom they shall be governed. These obligors acquiesced in the church law and thereby duly constituted the signors as their agents. The thought comes, that had the Bank desired knowledge as to who held title to the obligors' property, examination of the public record title would have apprised it that the Bishop held it in trust.

We would remark that in the Cemetery case the Association was sued without protest from its officers. Yet it is now said it can not be sued. We note that the trial court offered to enter judgment against

the Association but plaintiff declined and elected to dismiss it from the case. It is unfortunate that Bishop Schrembs was not made a party to these suits in his trust capacity; if he had been, this court, as would no doubt the trial court, would have entered judgment against him in that capacity.

The case of **August v Creque, 72 Oh St** 551 (555), although decided before the Negotiable Instrument Acts adoption, is pertinent to the question before us. It is reasoned, that:

"Whether or not a bill or note has been executed by a party in his individual or representative capacity, is in each particular case, a question to be determined from a consideration of the whole instrument. And if, giving full effect to all the terms in which the contract is expressed, it plainly appears from the instrument itself that the true object and intent of its execution is to bind the principal and not the agent, courts will adopt that construction of it, however informally that intention may be expressed."

The more recent case of **Cammon v Miller Rubber Company, 128 Oh St 72 (77),** in view of the fact that the petitions in these cases are drawn in the common short form, is of special interest. It is said:

"Where it is sought to hold individuals personally liable on an instrument which they have ostensibly signed in a representative capacity for a disclosed principal, the petition shoud contain allegations fixing such personal liability in order to state a good and sufficient cause of action."

In conclusion we would direct attention to one further authority. Wilson v Clinton Chapel, 138 Tenn. 398. Here we find an unincorporated Protestant Congregation with its officers involved in an action against them upon a promissory note. The same section of the uniform negotiable instrument act as embodied in the Tennessee law is being considered. That court reviews the section identical with our §8125 GC, and concludes with the statement found in the case's fifth syllabus, that when,

"A note of church trustees disclosing that it was signed by them as such for a debt

of the church did not render them personally liable, but the church was liable."

The judgment must be and is affirmed.

ROSS, J, presiding and MONTGOMERY, J, concur.